IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ESTATE OF ABDOUL "MALICK" SILLAH by its
Special Administrator, Paula Carter,

|  |  |  |
|---|---|---|
| | Plaintiff, | OPINION and ORDER |
| v. | | |
| | | 23-cv-96-jdp |
| JAVIER LOREDO, | | |
| | Defendant. | |

---

The sole claim remaining in this case is the excessive force claim based on the allegation that defendant Javier Loredo punched 16-year-old Abdoul Malick Sillah while Sillah was handcuffed. The case is scheduled for a final pretrial conference on December 18, 2024. This opinion addresses the parties' motions in limine. The court will also direct the parties to update their witness and exhibit lists in light of this order.

Copies of the court's drafts of the voir dire, special verdict form, and jury instructions are attached.

ANALYSIS

A.  **Plaintiff's motions in limine**

1.  **Motion No. 1: Exclude any reference to marijuana, alcohol, or other substance used by Paula Carter or any of Paula Carter's other children or family members**

Evidence that Carter, her children, or her other family members use marijuana, alcohol, or other controlled substances is irrelevant to the alleged excessive force and is not admissible to attack a witness's character. Drug or alcohol use would be admissible only if it affected a witness's ability to perceive or remember events about which she is testifying. Defendant asserts

that he "does not anticipate raising this issue" at trial because "Carter testified she did not see the punch." Dkt. 233, at 1–2. So it appears that this motion is unopposed. The parties should inform the court at the pretrial conference whether there is any evidence that any witness's perception of the events during Sillah's arrest was affected by drug or alcohol.

2. **Motion No. 2: Exclude any reference to marijuana use by Sillah**

The motion is granted as unopposed.

3. **Motion No. 3: Exclude references to Sillah's juvenile record, including any related conduct**

The motion is granted as unopposed.

4. **Motion No. 4: Exclude Carter's criminal record and juvenile background**

The motion is granted as unopposed.

5. **Motion No. 5: Exclude Carter's medical history**

The motion is granted as unopposed.

6. **Motion No. 6: Exclude alleged physical abuse by Carter against Sillah or any of Carter's other children**

The motion is granted as unopposed.

7. **Motion No. 7: Exclude any assertion pertaining to Sillah's custody and guardianship**

The motion is granted as unopposed.

8. **Motion No. 8: Exclude any assertion that Sillah's father requested no contact with Sillah due to his behavior**

The motion is granted as unopposed.

9. **Motion No. 9: Exclude references to Sillah's social media posts**

The motion is granted as unopposed.

10. **Motion No. 10: Preclude referring to Sillah as "the suspect" or "the criminal"**

The motion is granted as unopposed. The parties and witnesses may not refer to Sillah as "the suspect" or "the criminal."

11. **Motion No. 11: Exclude references to the Sillah family declining organ donation**

The motion is granted as unopposed.

12. **Motion No. 12: Exclude emails of officer Sarah Shimko**

The motion is granted as unopposed.

13. **Motion No. 13: Judicial notice that Sillah died on February 11, 2020**

The parties agree that an introductory instruction explaining Sillah's absence from the trial is necessary. But the parties disagree about what details the jury should hear about Sillah's death.

Plaintiff contends that the court should take judicial notice and tell the jury that Sillah died on February 11, 2020. Plaintiff proposes an instruction that includes the date of his death as well as the statement that "it is undisputed that the excessive force allegedly used by Javier Loredo in this case did not directly cause Malick's death." Dkt. 218, 19–20; Dkt. 241, at 16–17. Defendant contends that the date of Sillah's death is irrelevant and that the jury should not be told that Sillah died the day after the alleged punch. Defendant contends that the date of death would give the jury reason to speculate that the alleged punch was related to his death. Dkt. 226, at 9; Dkt. 233, at 4.

The court agrees with defendant and will deny plaintiff's motion. Plaintiff has offered no evidence that the punch caused or contributed to his overdose death, so the date of his death it is irrelevant, and potentially confusing and prejudicial.

14. **Motion No. 14: Exclude any references by any witness to any awards or commendations received by defendant Loredo or other law enforcement witnesses**

Plaintiff contends that evidence of any awards or commendations is inadmissible character evidence. In response, Loredo contends that he should be permitted to introduce such evidence to give the jury a complete picture of his service record if plaintiff attempts to use evidence of Loredo's service in the Marine Corp and on the Madison Police Department's SWAT team as negative character evidence.

The court will grant plaintiff's motion. To be clear, neither side has established any legitimate basis to introduce evidence of Loredo's character, which would amount to propensity evidence barred by Federal Rule of Evidence 404(a).

15. **Motion No. 15: Exclude comments, references, or assertions that Sillah would be treated differently under the law once he reached the age of 17**

The motion is granted as unopposed. Sillah's age may be disclosed as part of the context of the arrest. But his age is irrelevant to whether Loredo punched him or whether that was a reasonable use of force.

16. **Motion No. 16: Exclude all counsel, parties, and witnesses from making or advancing jury nullification arguments or suggestions**

The motion is granted as unopposed. Neither party may argue or suggest that the jury should disregard the court's instruction about the law that applies to this case.

## B.  Defendant's motions in limine

### 1.  Motion No. 1: Preclude evidence related to claims that were dismissed at summary judgment and limit the issues at trial to only the alleged punch

Loredo moves to exclude any evidence or argument about Sillah's death, the claims dismissed at summary judgment, or law enforcement's treatment of him after the alleged punch.

Plaintiff contends that evidence related to the dismissed claims is relevant for four reasons: (1) the jury will need the background facts to understand the interaction between Loredo and Sillah and to explain why Carter brought the claim in an amended complaint; (2) evidence of Sillah's subsequent drug use could be relevant to damages because it could have affected the pain and suffering he experienced; (3) the autopsy photographs show facial injuries that are relevant to whether the punch occurred; and (4) evidence of Sillah's threats to punch officers while he was in the hospital might support the inference that he was making those threat as retribution for Loredo's conduct.

None of these reasons is persuasive. First, plaintiff may introduce contextual evidence about the reason that Carter called law enforcement and why the officers decided to arrest him. But the procedural history of the case and what happened after Sillah was taken into custody have no bearing on whether Loredo punched Sillah during the arrest. Second, plaintiff offers only speculation that Sillah's behavior in custody could be related to the alleged punch. Third, plaintiff has no evidence that the autopsy photographs show injuries related to the alleged punch. Plaintiff's own expert testified that he could not say whether the punch occurred based on the autopsy. In the absence of any connection to the punch, showing the autopsy photos to

the jury would unfairly prejudice Loredo. Fourth, plaintiff offers only speculation that Sillah's later threats to officers had any connection to his arrest or the alleged punch.

The court will grant Loredo's motion to exclude evidence and argument concerning the dismissed claims.

### 2. Motion No. 2: Bifurcate liability and damages

Loredo asks the court to bifurcate the trial to avoid undue prejudice that could be created by introducing emotional testimony on damages before the jury decides the more straightforward issue of liability. Plaintiff contends that Loredo's concerns about the risk of prejudice are too speculative to justify bifurcation.

The parties have stipulated that if Loredo punched Sillah it was an unreasonable use of force, Dkt. 247, so the liability question is limited to whether the punch occurred. The parties dispute whether any testimony about what Sillah experienced after the alleged punch could be relevant to damages. At this point, the court doesn't see how the later events could be relevant to damages. But if those later events were admitted, it would be unduly prejudicial to Loredo. The court will reserve ruling on Loredo's motion to bifurcate until it hears what evidence the parties expect to present on damages.

### 3. Motion No. 3: Exclude audio from the cell phone video taken by Marionna Sillah

Sillah's sister Marionna recorded cell phone video of Sillah in which Sillah can be heard yelling that he had been punched in the face. Plaintiff has created an enhanced version of the audio that it contends contains a "crack sound in the footage that immediately precedes" Sillah's shouts that he had been punched. Dkt. 241, at 8; Dkt. 244-1. Loredo contends that

the court should exclude the audio because Sillah's statements are inadmissible hearsay. Dkt. 226, at 6–9.

Plaintiff contends that Sillah's hearsay statements are admissible as excited utterances under Rule 803(2). A hearsay statement is admissible as an excited utterance if the proponent of the statement establishes that: (1) a startling event occurred; (2) the declarant made the statement under the stress of the excitement caused by the startling event; and (3) the declarant's statement related to the startling event. *U.S. v. Zuniga*, 767 F.3d 712, 716 (7th Cir. 2014). The burden is on plaintiff as the proponent of the audio to establish these foundational prerequisites.

If Loredo punched Sillah, that would certainly qualify as a startling event. And the court is satisfied that Sillah was in a state of emotional agitation when he yelled that he had been punched, and his statements obviously relate to the alleged punch. But the first foundational element is disputed: whether the startling event—the punch—actually occurred.

Loredo argues that it would be circular logic to allow plaintiff to use Sillah's own hearsay statement itself to establish the prerequisite startling event. That's a common argument, but it is now well established that "the declaration itself may establish that a startling event occurred." *United States v. Moore*, 791 F.2d 566, 571 (7th Cir. 1986); *see also United States v. Brown*, 254 F.3d 454, 459 (3d Cir. 2001); Jack B. Weinstein & Margaret A Berger, *Weinstein's Federal Evidence*, § 803.04[2][a] (Mark S. Brodin, ed., Matthew Bender 2d ed. 2024). Nevertheless, the court has to decide whether this particular excited declaration provides adequate foundation for its own admissibility. "A trial court would act well within its discretion to exclude a statement that facially appeared to be an excited utterance on the grounds that the foundation for the exception, such as the demeanor of the declarant and the existence of a

startling event, were not via the statement alone established by a preponderance of the evidence." Charles Alan Wright & Jeffrey Bellin, *Federal Practice and Procedure* § 6818 (Thompson Reuters, 2017).

Sillah's recorded statements present a close call under Rule 803(2). The theoretical foundation of the excited utterance exception is that the emotional agitation of the declarant diminishes the likelihood of fabrication. In a protracted confrontation with police, like Sillah's arrest, it's not altogether unlikely that an arrestee would shout false things about the arresting officers. But, as plaintiff points out, there's no evidence that Sillah was aware that anyone was recording the incident, so that diminishes the likelihood that he was playing for some future audience. And the punch is not completely without corroboration: Sillah's younger brother testified that he saw it. The brother's testimony is impeachable on several grounds, but it's enough corroboration to persuade the court that Sillah's shouts are admissible as excited utterances. (The court puts little stock in the purported sound of the "crack" in the enhanced audio, because that sound is too indistinct and ambiguous to corroborate the alleged punch in the face.)

The court will deny the motion to exclude the audio because the Sillah's statements in the audio are admissible as excited utterances. The court need not reach plaintiff's alternative arguments under Rule 803(1) or Rule 807.

### 4. Motion No. 4: Jury instruction on why Sillah is not present for trial

The court will grant this motion and provide the jury Loredo's proposed instruction concerning Sillah's death. Plaintiff's proposed instruction would tell the jury that date of Sillah's death and state that it is undisputed that the alleged excessive force "did not directly cause Malick's death." Dkt. 241, at 17. But the date of Sillah's death is irrelevant and unfairly

prejudicial for the reasons explained in the court's analysis of plaintiff's motion in limine No. 13.

### 5. Motion No. 5: Preclude argument, testimony, or other evidence of Madison Police Department SOPs and other policies and procedures

Plaintiff contends that the Madison Police Department's policies and procedures on the use of force, including documentation requirements, are relevant to whether Loredo recklessly disregarded Sillah's rights. Plaintiff argues that the documentation policies show that the officers should have documented Loredo's punch and therefore demonstrate that the officers deliberately chose not to document it because they knew "it was wrong and improper." Dkt. 241, at 18.

The court will grant Loredo's motion. The parties have stipulated that it would have been unreasonable to punch Sillah in the face. Dkt. 247. The Department's policies and procedures regarding use of force are thus unnecessary and irrelevant to any contested issue.

### 6. Motion No. 6: Strike plaintiff's police practice expert Jeffrey Noble

Loredo has withdrawn this motion.

### 7. Motion No. 7: Preclude evidence regarding indemnification or insurance

The motion is granted as unopposed.

### 8. Motion No. 8: Preclude evidence or argument regarding other police incidents, lawsuits, or disciplinary records

The court will grant the motion. Plaintiff contends that a prior reprimand that Loredo received related to a subordinate officer's failure to properly document an incident. Dkt. 214, at 23 (citing Dkt. 245-1). Plaintiff's argument appears to be that this prior act is evidence that Loredo intentionally failed to document the alleged punch in this case. But this is propensity

evidence prohibited by Rule 404(1), and plaintiff does not identify any proper purpose that would make it admissible under Rule 404(b)(2).

### 9.  Motion No. 9: Preclude golden rule arguments

The motion is granted as unopposed.

### 10. Motion No. 10: Preclude testimony or argument regarding "Justice for Malick"

Loredo contends that plaintiff's witnesses should be precluded from making statements about this lawsuit being a way to get "justice" for Sillah because it could lead the jury to improperly infer that Sillah's death was related to the alleged punch. The plaintiff's motivations for the lawsuit are irrelevant. The court will grant this motion.

### 11. Motion No. 11: Preclude reference to the punch as deadly force

Plaintiff contends that the court should deny this motion, quoting cases in which courts have stated that blows to the head "may constitute deadly force." Dkt. 241, at 27 (quoting *Sallenger v. Oakes,* 473 F.3d 731, 740 (7th Cir. 2007) and *Pekrun v. Puente,* 172 F. Supp. 3d 1039, 1044 (E.D. Wis. 2016)). But, in this case, there is no evidence that the alleged blow to Sillah's head caused his death, either directly or indirectly. It would be inaccurate and highly prejudicial to Loredo to suggest that the punch might have been "deadly force." The court will grant the motion.

### 12. Motion No. 12: Sequester non-party witnesses

The motion is granted as unopposed. Non-party witnesses, including the individuals were previously defendants that were dismissed from this case, shall be excluded from the courtroom prior to giving testimony.

### 13. Motion No. 13: Disclosure of the sequence of witnesses

Defendant asks this court to order the parties to disclose the sequence of witnesses to be called at trial for ease of preparation and for the sake of efficiency. Plaintiff opposes, contending that it "is not within the spirit of the justice system" to force the plaintiff to "provide its playbook to the defendant" and that jury trials "sometimes call for strategic changes mid-trial." Dkt. 241, at 28. Trial by surprise is not within the spirit of the Federal Rules of Civil Procedure.

The court will follow its standard practice and require the parties to disclose the witnesses to be called, and the order in which they will be called, by 6:00 p.m. of the prior business day.

## C. Exhibit and witness lists

The court's rulings on the motions in limine will resolve many of the parties' objections to the witness and trial exhibit lists. The parties shall file revised lists reflecting the rulings in this opinion and order by noon on December 16, 2024. The revised witness lists should briefly identify the topics that each witness is expected to testify about. Any objections to the revised witness and exhibit lists are due by noon on December 17.

ORDER

IT IS ORDERED that:

1.  The court rules on plaintiff's motions in limine as follows:

    a.  Motion in limine no. 1, regarding witnesses' substance use, is GRANTED as unopposed, but the parties should inform the court whether there will be testimony that any witness was impaired.

    b.  Motions in limine no. 2–12, and 16, are GRANTED as unopposed.

    c.  Motion in limine no. 13, regarding judicial notice of the date of Sillah's death, is DENIED.

    d.  Motion in limine no. 14, regarding awards or commendations received by defendant or other law enforcement witnesses, is GRANTED.

    e.  Motion in limine no. 15, regarding Sillah's treatment under the law at the age of 17, is GRANTED.

2.  The court rules on defendant Javier Loredo's motions in limine as follows:

    a.  Motion in limine no. 1, regarding dismissed claims in this case, is GRANTED.

    b.  The court reserves ruling on motion in limine no. 2, regarding bifurcating the trial until it hears from the parties what damages evidence will be presented.

    c.  Motion in limine no. 3, regarding the audio from the cell phone footage of Sillah's arrest, is DENIED.

    d.  Motion in limine no. 4, regarding the jury instruction about Sillah's absence from the trial, is GRANTED. The court will provide the jury the instruction proposed in defendant's motion.

    e.  Motion in limine no. 5, regarding Madison Police Department policies and procedures, is GRANTED.

    f.  Motions in limine nos. 7 and 9, concerning indemnification, insurance, and golden rule arguments, are GRANTED as unopposed.

    g.  Motion in limine no. 8, concerning evidence of other police incidents, lawsuits, or disciplinary records, is GRANTED.

h. Motion in limine no. 10, regarding statements about seeking justice for Sillah, is GRANTED.

i. Motion in limine no. 11, regarding describing the punch as "deadly force," is GRANTED.

j. Motion in limine no. 12, to sequester non-party witnesses, is GRANTED as unopposed.

k. Motion in limine no. 13, regarding disclosure of witness sequence, is GRANTED. The parties shall disclose the witnesses and the order of those witnesses by 6:00 p.m. of the prior business day.

Entered December 11, 2024.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

13